# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4949 | **DATE** | 3/4/2003 |
| **CASE TITLE** | Jesus Quiroga vs. Eastlake Management | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Each side's motion or motions in limine is or are granted in part and denied in part. This case will go forward for trial on the basis of the rulings announced here. (36-1, 42-1, 44-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | MAR 05 2003 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 MAR -4 PM 2:57 | 3/4/2003 date mailed notice | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JESUS A. QUIROGA, )
)
Plaintiff, )
)
v. ) No. 01 C 4949
)
EASTLAKE MANAGEMENT and )
DEVELOPMENT CORPORATION, )
)
Defendant. )

MEMORANDUM OPINION AND ORDER

This employment discrimination action, in which Jesus Quiroga ("Quiroga") asserts he was the victim of race-based discrimination when East Lake Management and Development Corporation ("East Lake") fired him, is ready for trial. After this Court's entry of the final pretrial order ("FPTO") that had been jointly submitted by the parties' counsel, each tendered motions in limine. Both have now responded, and the motions are ready for disposition. Because Quiroga has both the burden of going forward and the burden of persuasion, this opinion will address East Lake's motions first.

East Lake's Motions in Limine

In part East Lake seeks to bar a gaggle of exhibits taken from the employment files (1) of Chandra Crawford ("Crawford"), the Building Manager at Parkview Apartments (where Quiroga worked) and the person with whom Quiroga had the confrontations that triggered his firing, and (2) of a group of East Lake's janitorial employees who also worked at Parkview Apartments.

Some of East Lake's objections require individual treatment, while others permit collective treatment.

Because the gravamen of Quiroga's claim is that he was treated less favorably in terms of discipline than other employees (leading to the hoped-for inference that the disparate treatment was because of his race[1]), the different events that occasioned discipline against the various employees involved must bear some reasonable relationship in terms of their nature and gravity. But East Lake takes an overly restrictive view of that requirement, somewhat akin to distinguishing a precedent because the earlier case involved a black horse while the current one involves a white one. This Court will instead, where appropriate, leave to the good sense of the trial jury the determination of the probative force (or lack of it) of the discipline (or lack of discipline) visited on other employees--and the challenged exhibits will be viewed from that perspective.

Because Quiroga's termination was ascribed to incidents of claimed insubordination on his part, exhibits from the files of other employees that also bear on insubordination will be allowed--thus permitting each side to argue similarities or dissimilarities to the jury without converting the action into a

---

[1] Quiroga is Hispanic, while Crawford and the other employees are all African-American.

series of minitrials. On that basis East Lake's motion as to Crawford's personnel file gets mixed treatment, being denied as to Quiroga Exs. 1 and 2 and granted as to Exs. 3 through 6. East Lake's motion is also granted as to Quiroga Exs. 18 through 21 (relating to Sharon Daniel), 22 and 27 (relating to Mary Rogers), 42 through 44 (relating to Marcellus Riley) and 45 (relating to Alfred Neal). Finally, as to Stephanie Hannah, East Lake's motion is denied as to Exs. 28 and 30 and granted as to Exs. 29, 31, 32, 46 and 47 (although East Lake's counsel may want to take a fresh look at Exs. 46 and 47 in light of the rulings made here).

Apart from those objections as to exhibits, East Lake's other motion in limine seeks to keep out of the case any reference to the statement "you can kiss my black ass if you think that you are going to get your job back," an assertion that Quiroga ascribes to East Lake's Vice President Leroy Bannister ("Bannister") when Quiroga went to Bannister the day after he had been fired by his ultimate supervisor, Juana Pollard ("Pollard").[2] Understandably East Lake, citing and quoting from Schreiner v. Caterpillar, Inc., 250 F.3d 1096, 1099 (7th Cir. 2001), seeks to keep that statement out of the trial as an

---

[2] Crawford had told Quiroga to leave the Parkview Apartments premises on August 15, 2000 because of his claimed insubordination. When he came back the next day, Pollard confirmed that he was fired based on Crawford's report to her.

3

assertedly "stray comment"--and one not made by Pollard as East Lake's decisionmaker in the firing process.

But there is more to the matter than East Lake would like to acknowledge. When the previously defaulted East Lake[3] sought to get back into the case back in 2001, it supported that effort with sworn statements by both Bannister and Crawford. Here is the relevant part of Bannister's Supplemental Declaration:

> 3. Plaintiff's assertion in paragraph 10 of his Affidavit that I made a racial remark in a meeting I had with him after his termination is false. I had never met Plaintiff before that meeting. We discussed whether or not East Lake would return him to work, and I told him East Lake would not. I did not make the statement attributed to me. Making such a statement to an employee or a former employee is totally contrary to anything I would do. I would discipline any East Lake employee if I ever discovered they made such a statement. Furthermore, Chandra Crawford and Juana Pollard were present at the meeting and will corroborate the outrageous and offensive falsity of Plaintiff's allegation.

And here is the corresponding portion of Crawford's Declaration:

> 3. I was present at a meeting in August, 2000 between Mr. Quiroga and Leroy W. Bannister. Juana Pollard was also present. At no time during that meeting did Mr. Bannister make any comments along the lines of: "You can kiss my black ass if you think that you are going to get your job back." I have known Mr. Bannister for several years and I cannot imagine him making such a comment to anyone.

---

[3] After East Lake had been properly served and failed to file any appearance or responsive pleading, Quiroga's counsel moved for and was awarded a default judgment. Then East Lake came in belatedly on a motion to seek relief from the default (which this Court granted), coupling the motion with sworn statements to establish the existence of a bona fide defense.

4

But when it later came to testimony by the same two persons during their depositions, a totally different story emerged from each. Bannister, who had previously sworn that both Crawford and Pollard would confirm his denial of Quiroga's charge that he had made a racial remark, changed his version of events to admit that neither of the two was present at his meeting with Quiroga (Bannister Dep. 48)--and of course that meant, contrary to his earlier statement under oath, that neither could support his denial. As for Crawford, she not only confirmed that she was not at the meeting (Crawford Dep. 46, 50-51), but she also stated that she signed the false declaration because Bannister gave it to her and asked her to sign it to deny his having made the offensive statement (id. 49, 50-51).

As in most lawsuits, much is likely to hinge on the jury's perception of the witnesses' credibility. Not only are the self-contradictions in the Bannister and Crawford statements plainly relevant on that score, but the account of Crawford's willingness to comply with Bannister's request could also be urged as evidence of bias on her part.[4] Finally, if Quiroga's version of the exchange with Bannister is credited, it could be considered that his loss of employment (attributable to Bannister's refusal

---

[4] Crawford testified that she misunderstood the declaration as ascribing the "black ass" statement to her and not Bannister, so that she did not knowingly subscribe to a false statement. Whether or not to buy that is for the jury to decide.

5

to reconsider his firing just one day later) was race-related. So East Lake's motion in limine on that score is denied.

### Quiroga's Motion in Limine

Quiroga's motion in limine has two parts. As with East Lake's motions, Quiroga's is granted in part and denied in part.

To begin with, Quiroga seeks to exclude several exhibits that are said to "relate to certain statements purportedly wrote [sic] by the Plaintiff." Although Quiroga does not attach those documents (East Lake Exs. D, F-1 and F-2 and Quiroga Dep. Ex. L), East Lake's response says that all of them are substantially identical, and it attaches Ex. F-2 to its filing (which this Court has of course reviewed in light of the motion and response).[5]

Nothing in what the parties have submitted appears to call for the independent admission of the exhibit or exhibits at issue. To the extent that East Lake contends the documents show that Quiroga had then evidenced no concern about any alleged national origin discrimination against him, the statement does in fact contain two expressions on his part about being the alleged

---

[5] It appears unnecessary to explore at this belated date the side issue of whether Quiroga Dep. Ex. L was written by him, something that he denied during his Dep. 151-52. Although East Lake's counsel then responded with the stated intention that "we'll get a handwriting expert and we'll do everything necessary to prove that you wrote this" (id. 152-53), nothing was done in that respect before discovery was closed and the FPTO was completed, tendered and signed by this Court. As such, that collateral issue is out of the case for trial purposes.

victim of race discrimination. In addition, the statement ends with the events of August 16, 2000, before Quiroga's next-day meeting with Bannister--a meeting that admittedly took place--so that no inference can be drawn either way about Quiroga's claim of the "black ass" statement by Bannister.

It is true that the portion of Ex. F-2 in which Quiroga recounts the events of August 15, 2000 (the date on which Crawford ejected him from Parkview Apartments) does not include any reference to the racial epithet that Quiroga claims that *she* used. To that extent the exhibit will be available for impeachment purposes (including the possible admission into evidence of that portion of the exhibit), but that does not call for the exhibit's admissibility in its totality.

In short, the challenged exhibits will not be admitted as such. As and when Quiroga testifies at trial inconsistently with the written version, impeachment through the exhibit (and perhaps its partial admissibility) will be available to East Lake.

As for the other challenged East Lake exhibits (its Exs. B and K), they relate to the rejection of other claims that Quiroga made to the Chicago Housing Authority and the United States Department of Housing and Urban Development. But both of those agencies dealt with Quiroga's claim of having been underpaid, while at the same time he was independently asserting his claim of racial discrimination through the proper channels (which those

7

agencies were not). Based on the parties' submissions, it appears that those exhibits are inadmissible as Fed. R. Evid. ("Rule") 404(b) material--and even if they might arguably qualify in those terms, the balancing process called for by Rule 403 would keep them out: whatever marginal probative value they might have would be substantially outweighed by the danger of unfair prejudice. As to those documents, then, Quiroga's motion is granted.

## Conclusion

Each side's motion or motions in limine is or are granted in part and denied in part. This case will go forward for trial on the basis of the rulings announced here.

_____
Milton I. Shadur
Senior United States District Judge

Date: March 4, 2003